# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TERESA EVANS, ET AL., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-2800 |
| | § | |
| JOHNSON & JOHNSON and ETHICON, INC., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court are (1) a motion to dismiss filed by defendants Johnson & Johnson and Ethicon, Inc. (collectively, "Defendants") (Dkt. 2); (2) a motion to sever filed by Defendants (Dkt. 3); (3) a motion to stay pending a transfer to MDL No. 2327 filed by Defendants (Dkt. 9); (4) a motion to remand filed by the plaintiffs (Dkt. 11); and (5) a motion to supplement filed by Defendants (Dkt. 22). Having considered the motions, related documents in the record, and the applicable law, the court is of the opinion that the motion to dismiss should be GRANTED, the motion to remand should be DENIED, the motion to supplement and the motion to sever should be DENIED AS MOOT, and the motion to stay should be GRANTED.

## I. BACKGROUND

Defendants are the manufacturers and marketers of the GYNECARE TVT™ Family of Products Tension free support for Incontinence ("Pelvic Mesh Products"). Dkt. 1-2. The plaintiffs are 96 individuals who claim to have had adverse reactions to Pelvic Mesh Products including, among other things, acute and chronic nerve damage and pain, chronic pelvic pain, pelvic floor damage, and infection. Dkt. 1-2. Two of the 96 plaintiffs are from New Jersey, and one is from

Texas.  Dkts. 1; 1-2, 21.  Defendants are both incorporated in New Jersey and the principal place of business for both companies is in New Jersey.  *Id.*; Dkts. 1-11, 1-12, 2.

The plaintiffs contend that Defendants have substantial and continuous contacts with Texas, but they do not contend that their injuries resulted from any activity conducted by Defendants in Texas.  Dkts. 2, 11.  These contacts, according to the plaintiffs, include (1) selling more Pelvic Mesh Products in Texas than in New Jersey; (2) hiring and training Texas-based sales representatives and division managers who market and sell the Pelvic Mesh Products; (3) training physicians to use the Pelvic Mesh Products in Texas; and (4) maintaining websites that are directed at marketing Pelvic Mesh Products to all states, including Texas.  Dkt. 11.  Defendants assert that these contacts are insufficient for Texas to have general jurisdiction over Defendants with regard to the claims of the 95 non-Texas plaintiffs and request that the court dismiss these claims for lack of personal jurisdiction.  Dkt. 2.  Defendants have also filed a motion to sever the claims of the New Jersey plaintiffs, arguing that they were added only to prevent federal jurisdiction.  Dkt. 3.  The plaintiffs argue that the claims of the two plaintiffs from New Jersey are properly joined, that their claims destroy diversity jurisdiction, and that the court should remand the case to state court forthwith due to the lack of subject matter jurisdiction, leaving the personal jurisdiction issue for the state court to decide.  Dkts. 11, 16.

In addition to or instead of dismissal of all claims asserted by non-Texas plaintiffs or severance of the claims of the New Jersey plaintiffs, Defendants request a stay.  Dkt. 9.  Defendants report that there are thousands of virtually identical products liability cases pending in Federal District Courts based on diversity jurisdiction that allege injuries similar to those claimed by the plaintiffs in this case.  *Id.*  The Judicial Panel on Multidistrict Litigation ("JPML") has therefore established six different Multi-District Litigations ("MDL") for these claims in the Southern District

2

of West Virginia.  *Id.*  Defendants have already filed a notice of potential tag-along action for this case with the JPML.  *Id.*  Defendants note that the JPML frequently issues transfer orders on these cases even if there are pending challenges to subject matter jurisdiction in the transferor court.  *Id.*  Defendants thus request that the court stay the case pending transfer.  *Id.*

The plaintiffs oppose a stay because they contend that the court lacks subject matter jurisdiction, due to a lack of diversity, and they reiterate that the court should remand the case to state court.  Dkt. 13.  Plaintiffs argue that the court must consider their challenge to subject-matter jurisdiction before considering any of Defendants' motions.  *Id.*  Defendants acknowledge that the current parties are not diverse and that, if these parties all remain in the case, the court lacks subject matter jurisdiction, but they urge the court to consider personal jurisdiction before delving into the plaintiffs' subject matter jurisdiction claim.  Dkt. 2.  Defendants contend that there is no set order on which type of jurisdiction the court considers first, and that it is more efficient to consider their straightforward personal jurisdiction challenge first.  *Id.*

## II. ORDER OF CONSIDERATION

The plaintiffs request that the court to consider their motion to remand due to the "glaring lack of subject matter jurisdiction" before considering whether Texas may exercise personal jurisdiction over Defendants for the claims of the non-Texas plaintiffs.  Dkt. 11.  They contend that the two New Jersey plaintiffs have viable claims that destroy diversity jurisdiction.  *Id.*  They argue that the "question of a court's jurisdiction over a proceeding is a fundamental one, going to the court's very power to act."  *Id.*  They assert that "courts have declared the requirement that jurisdiction be established as a threshold matter."  *Id.*

The plaintiffs cite *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 118 S. Ct. 1003 (1998), and *Dahiya v. Talmidge Int'l, Ltd.*, 371 F.3d 207, 210 (2004), in support of their contention

3

that the court must consider subject matter jurisdiction before it considers the motion to dismiss for lack of personal jurisdiction. *Id.* In *Steel*, the U.S. Supreme Court held that a court could not hypothesize subject-matter jurisdiction in order to first decide the merits of a case. 523 U.S. at 93–95. The Court stated that "[h]ypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Id.* at 101.

In *Dahiya*, the Fifth Circuit considered whether it could review a denial of a motion to stay and compel arbitration issued with the district court's motion of remand. 371 F.3d at 209–10. The district court had remanded for lack of subject matter jurisdiction, and the Fifth Circuit determined that it did not have jurisdiction to review the denial of the motion to stay and compel arbitration because the district court's decision on those motions was jurisdictional and therefore not conclusive. *Id.* at 211. Neither *Steel Co.* nor *Dahiya* is on point with regard to whether the court can address a personal jurisdiction issue prior to determining if it has subject-matter jurisdiction.

Defendants cite *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 119 S. Ct. 1563 (1999) and *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 213-14 (5th Cir. 2000) in support of their argument that the court may consider their personal jurisdiction challenge before considering the plaintiffs' motion to remand. Dkt. 2. In *Ruhrgas AG*, the Supreme Court was faced with essentially the issue here: "If, as *Steel Co.* held, jurisdiction generally must precede merits in dispositional order, must subject-matter jurisdiction precede personal jurisdiction on the decisional line? Or, do federal district courts have discretion to avoid a difficult question of subject-matter jurisdiction when the absence of personal jurisdiction is the surer ground?" *Ruhrgas AG*, 526 U.S. at 577–78. The Court held: "[I]n cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubt about

4

its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry." *Id.* at 578.

In *Alpine View Co.*, the Fifth Circuit, relying on *Ruhrgas AG*, determined there was no abuse of discretion when a magistrate judge considered motions for dismissal for lack of personal jurisdiction prior to subject-matter jurisdiction motions for judicial economy. 205 F.3d at 214.  The court pointed out that a "federal court may consider personal jurisdiction issues prior to addressing a motion to remand where 'federal intrusion into state courts' authority is minimized.'" *Id.* (quoting *Ruhrgas AG*, 26 U.S. at 587).  Thus, the court may decide personal jurisdiction prior to considering the subject-matter jurisdiction if the circumstances of this case warrant that order or consideration.

The court has reviewed the arguments relating to both jurisdictional claims and has determined that the most efficient course of action is to consider the motion to dismiss for lack of personal jurisdiction, which results in dismissal of the claims of all plaintiffs except the single Texas plaintiff, thereafter deny the motion to remand because no non-diverse plaintiffs remain, and then stay the case pending transfer to the MDL.[1]

### III.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants assert that the non-Texas plaintiffs cannot establish personal jurisdiction over them in Texas.  Dkt. 2.  Defendants point out that the plaintiffs have not alleged specific jurisdiction and that any assertions that the court may exercise general jurisdiction over the out-of-state plaintiffs' claims is foreclosed by the U.S. Supreme Court's decision in *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746 (2014).  *Id.*  The plaintiffs assert that Defendants interpret *Daimler AG* in

---

[1]  The court notes that it would be required to consider the personal jurisdiction issue as part of its analysis on the motion to remand, anyway, since the lack of personal jurisdiction over the New Jersey plaintiffs is part of Defendants' misjoinder argument.  *See* Dkt. 1.

"a rigid and overly-simplistic way" and that Defendants' presence in Texas is substantial enough to allow the exercise of general jurisdiction.  Dkt. 12.

A.    **Legal Standard**

Federal courts are courts of limited jurisdiction.  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 710 (1982).  Federal courts sitting in diversity may exercise personal jurisdiction to the extent permitted by the laws of the state in which the court sits.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)).  The Texas long-arm statute allows jurisdiction to be exercised to the extent allowable under the Due Process clause of the Fourteenth Amendment.  *Id.* at 424-25 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)).

When the court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdiction.  The burden then shifts to the defendant to demonstrate that the assertion of jurisdiction would be unfair; however, such demonstrations are rare.  *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  In deciding whether to exercise personal jurisdiction, the court can consider the entire contents of the record, including affidavits.  *Paz v. Bush Engineered Metals, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

The Due Process analysis entails a two-part inquiry.  *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990).  First, "the nonresident defendant purposefully must have established 'minimum contacts' with the forum state such that he invoked the benefits and protections of the forum's laws and thus reasonably could anticipate being haled into court there."  *Id.*  Second, "circumstances must be such that the exercise of personal jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"  *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S. Ct. 1026 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-

76, 105 S. Ct. 2174 (1985); and *Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071 (5th Cir. 1990)).

Minimum contacts are established through the assertion of either general or specific jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 865 (5th Cir. 2001). A court may exercise specific jurisdiction if "the cause of action arises out of a defendant's purposeful contacts with the forum." *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559 (1980)). "Even a single, substantial act directed toward the forum can support specific jurisdiction." *Id.* (citing *Burger King Corp.*, 471 U.S. 462 (1985)). "Where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, . . . due process requires that the defendant have engaged in 'continuous and systematic contacts' in the forum to support the exercise of 'general' jurisdiction over the defendant." *Id.* at 1362 (citing *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408). These contacts must be so continuous and systematic "as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place one in which the corporation is fairly regarded as at home." *Id.* at 2853–54.

**B.    Analysis**

The plaintiffs assert that Defendants are subject to personal jurisdiction in Texas under a general jurisdiction theory. Dkt. 12. They assert that Defendants have continuous and systematic contacts with Texas because they sell more products in Texas than in New Jersey, that they hire and train Texas-based sales representatives and division managers to market and sell the Pelvic Mesh Products to Texas physicians and hospitals, that they train physicians on the use of the Pelvic Mesh

7

Products in Texas, and that they maintain websites that direct marketing of the products to all states, including Texas. *Id.* The plaintiffs rely on *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S. Ct. 413 (1952), asserting that the contacts in this case are similar to the contacts in *Perkins*. *Id.*

In *Goodyear*, the Supreme Court noted that *Perkins* "remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Goodyear*, 131 S. Ct. at 2856  In *Daimler,* the Court pointed out that there was general jurisdiction in *Perkins* because the state that was allowed to exercise general jurisdiction, Ohio, was essentially the corporation's "'principal, if temporary, place of business.'" *Daimler*, 134 S. Ct. at 756 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 n.11, 104 S. Ct. 1473 (1984)). In *Perkins*, the president of the corporation had moved to Ohio during World War II while the company's mining operations in the Philippines were suspended, and he kept an office, maintained company files, and oversaw company's activities from Ohio. *Id.* (discussing *Perkins*).

Here, while there is an allegation that Defendants sold *more* Pelvic Mesh Products in Texas than in New Jersey, the plaintiffs acknowledge in their complaint that Defendants' maintain their principal places of business in New Jersey. Thus, the analogy to *Perkins* is flawed. "A corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amendable to suits unrelated to that activity.'" *Goodyear Dunlop Tires Ops., S.A.*, 131 S. Ct. at 2856. While it is possible for a state in which a corporation is neither incorporated nor has its principal place of business to have general jurisdiction over the corporation, this is a possibility only if the business is essentially at home in the forum. *See id.*; *Daimler AG*, 134 S. Ct. at 761–62. If the court were to consider the contacts cited by the plaintiffs as sufficient to render Texas "home" for Defendants, then "the same global reach would presumably be available in every

8

other State in which [Defendants'] sales are sizable."[2] *Daimler AG*, 134 S. Ct. at 761. "Such exorbitant exercises of [general or] all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* The court finds that an exercise of personal jurisdiction over the out-of-state defendants in this case would extend beyond the reach of the Texas long-arm statute.

Because Texas cannot exercise general jurisdiction over the Defendants with regard to the claims asserted by the non-Texas plaintiffs and there are no claims supporting specific jurisdiction with regard to these plaintiffs, Defendants' motion to dismiss the claims of the non-Texas plaintiffs for lack of personal jurisdiction is GRANTED. These claims are DISMISSED WITHOUT PREJUDICE.

## IV. MOTION TO SEVER

Defendants move to sever the claims brought by the New Jersey plaintiffs. Dkt. 3. Since the court has dismissed those claims, the motion to sever is DENIED AS MOOT.

## V. MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

The plaintiffs' motion to remand rests on the lack of complete diversity associated with two of the plaintiffs and both defendants residing in New Jersey. *See* Dkt. 11. Since the court has dismissed the claims of the New Jersey plaintiffs and the only remaining plaintiff is from Texas, there is complete diversity of citizenship. Plaintiffs' motion to remand for lack of subject matter jurisdiction is DENIED.

---

[2] Plaintiffs make much of the fact that Defendants' sales in Texas are greater than the sales in New Jersey. The court, however, takes judicial notice of the fact that Texas is significantly larger than New Jersey in area and population. Thus, it is not surprising that total sales are greater in Texas even if Defendants do not make their home here.

## VI. Motion to Stay

Defendants move to stay all proceedings pending a decision to transfer to MDL No. 2327.

Dkt. 9.  The plaintiffs argue that whether to grant or deny a stay is within the court's discretion, that

the court should remand the case due to a lack of subject matter jurisdiction rather than addressing

the motion to stay, and that this court should resolve the jurisdictional questions rather than leaving

it to the MDL.  Dkt. 13.  Since the court has determined the jurisdictional questions and has decided

not to remand the case, it finds that a discretionary stay is appropriate.  Defendants' motion to stay

(Dkt. 9) is GRANTED.   This case is hereby STAYED and ADMINISTRATIVELY CLOSED

pending a transfer to MDL No. 2327.

## VII. Conclusion

Defendants' motion to dismiss (Dkt. 2) is GRANTED.  All claims made by plaintiffs other

than the Texas plaintiff, Teresa Evans, are hereby DISMISSED WITHOUT PREJUDICE for lack

of jurisdiction.  Plaintiffs' motion to remand (Dkt. 11) is DENIED.  Defendants' motion to sever

(Dkt. 3) is DENIED AS MOOT.  Defendants' motion to stay (Dkt. 9) is GRANTED, and its motion

to supplement (Dkt. 22), which related to the motion to stay, is DENIED AS MOOT.

Signed at Houston, Texas on December 23, 2014.

_____

Gray H. Miller
United States District Judge

10